Kelly A. Cameron, Bar No. 7226
KCameron@perkinscoie.com
Alison C. Hunter, Bar No. 8997
AlisonHunter@perksincoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, ID  83702-5391
Telephone:  208.343.3434
Facsimile:  208.343.3232

*Attorneys for Petitioner Danilo Pennacchia*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE THE APPLICATION OF DANILO PENNACCHIA,<br><br>*Petitioner,*<br><br>v.<br><br>DENA MICHELLE HAYES,<br><br>*Respondent.* | Case No. 1:16-CV-00173-EJL<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM** |

Pursuant to the Court's Order re: Motion for Expedited Briefing and Request for Expedited Consideration of Motion for Appointment of Guardian ad Litem (Dkt. 17), petitioner Danilo Pennacchia ("Mr. Pennacchia" or "Petitioner") submits this response in opposition to Respondent's Motion for Appointment of Guardian ad Litem (Dkt. 14) filed on May 27, 2016. For the reasons set forth below, the Court should deny the motion.

I.     ARGUMENT

In her moving papers, Respondent Dena Michelle Hayes ("Ms. Hayes" or "Respondent") asks the Court to appoint a guardian ad litem "who may be a lawyer or clinician experienced in working with children and families" to "meet with" the minor child of Petitioner and Respondent ("S.A.P.H." or the "Child"), "undertake an assessment and evaluation" of her, and "review

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 1
131299674.1

available materials to address" the following four points which Respondent contends are "pertinent to" the Verified Petition for Return of Child Pursuant to The Hague Convention (Dkt. 3) (the "Petition for Return"), Respondent's defenses thereto, and the Court's determination of this matter:

> 1.  Consider and report on S.A.P.H.'s relative ties and developmental, family, school, and other connections to the United States and Italy to assist the Court in its inquiry into S.A.P.H.'s place of habitual residence;
>
> 2.  Assess, evaluate, and opine upon S.A.P.H.'s ability and maturity to express a desire to return to Italy or stay in the United States and investigate and report on the child's wishes regarding her preference as to her country of residence and the reasons for such wishes;
>
> 3.  Assess, evaluate, and opine upon whether a return to Italy would constitute a grave risk of exposing S.A.P.H. to psychological harm or otherwise place S.A.P.H. in an intolerable situation; and
>
> 4.  Assist in suggesting or developing possible undertakings that the Court may require in the event it should grant the Petition for Return, which include placing conditions on S.A.P.H.'s departure from this jurisdiction to a foreign jurisdiction to ensure the safe care, custody, and development of S.A.P.H.

Resp't's Mot. for Appointment of Guardian ad Litem (Dkt. 14) (hereinafter cited as "Mot. at __") at 1-2; Resp't's Mem. in Supp. of Mot. for Appointment of Guardian ad Litem (Dkt. 14-1) (hereinafter cited as "Mem. at __") at 2.

Because the requested appointment is neither warranted nor authorized under the Federal Rules of Civil Procedure or Idaho state law and because the proposed guardian will unnecessarily complicate the proceedings on the Petition for Return without aiding the Court in determining the matter, the Court should exercise its discretion to deny the motion.

A. **The Motion Is Not Supported by Federal Rule of Civil Procedure 17(c)(2) or Any Idaho Statutory Provision.**

As a preliminary matter, Respondent does not request the guardian appointment pursuant to the Federal Rules of Civil Procedure or any Idaho statute(s). Rule 17 of the Federal Rules

provides in relevant part that the "court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).  In the context of a petition for return under The Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention"),[1] courts have held that where, as here, the child's "fundamental interests under the Convention are adequately represented, as both [Petitioner and Respondent] are making an effort in [the] case to represent those interests," the appointment of a guardian is unwarranted.  *See Ostos v. Vega*, No. 3:14-cv-3935-L., 2015 WL 569124, at *6 (N.D. Tex. Feb. 11, 2015); *cf. Sanchez v. R.G.L.*, 761 F.3d 495, 508 (5th Cir. 2014) (ordering district court on remand to appoint a guardian ad litem pursuant to Rule 17(c)(2), given "exceptional circumstances" of case, where abducting parents disclaimed any responsibility for children, leaving them with "no advocates before the district court").  Because S.A.P.H.'s interests are being adequately represented in this proceeding by both of her parents, appointment of a guardian under Rule 17(c)(2) would be improper.

Likewise, Idaho state law does not support the Court's appointment of a guardian in this proceeding.  Respondent does not cite or rely on any Idaho statute in support of her motion, and Petitioner is unaware of any positive Idaho law authorizing the Court to appoint a guardian as requested.  Accordingly, the Court should not appoint a guardian for S.A.P.H. pursuant to Idaho law.  *See Clarke v. Clarke*, No. 08-690, 2008 WL 2217608, at *4 n.3 (E.D. Pa. May 27, 2008) (denying motion to appoint guardian ad litem because "Pennsylvania law provides for the appointment of a guardian ad litem under certain circumstances and none of them apply here").

B.  **The Court Should Deny the Motion Because the Stated Purposes of the Proposed Guardian Are Unhelpful and the Appointment Will Unnecessarily Complicate the Resolution of the Return Petition.**

As to the merits of the appointment requested and the reasons stated in support of the

---

[1] Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, *reprinted in* 51 Fed Reg. 10494 (Mar. 26, 1986).

request, the Court should deny the motion because, as explained below, none of the activities, assessments, or opinions Respondent proposes for the guardian will aid the Court in making determinations required to adjudicate the Petition for Return.  Rather, the involvement of a guardian in this case based on the allegations at issue will only serve to complicate the proceedings unnecessarily.  The appointment urged is factually unwarranted and, under the facts at issue here, would be, in virtually all respects, completely unprecedented.  Accordingly, the Court should deny the motion.

> 1. **The Proposed Guardian Will Not Aid the Court's Determination of the Child's Habitual Residence Prior to the Wrongful Retention.**

In determining the merits of the Petition for Return, the Court must answer a number of foundational questions, one of which is: "Immediately prior to the removal or retention, in which state was the child habitually resident?"  *See Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001).  In this regard, the U.S. Court of Appeals for the Ninth Circuit has pointed out:

> The Convention seeks to protect children by creating a system of rules that will inform certain decisions made by their parents. "Habitual residence" is the central – often outcome-determinative – concept on which the entire system is founded.

*Mozes*, 239 F.3d at 1072 (citations omitted).  And, as to this "often outcome-determinative concept," the same court has noted:

> The Perez-Vera Report describes "habitual residence" as "a well-established concept in the Hague Conference, which regards it as a question of pure fact, differing in the respect from domicile."

*Id.* at 1071 (citing and quoting Elisa Perez-Vera, Explanatory Report, ¶ 66 at 445, in 3 Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction 426 (1982) (hereinafter cited as the "Perez-Vera Report")).[2]

---

[2] The Perez-Vera Report is "recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." *Mozes*, 239 F.3d at 1070, n.3 (citation omitted, internal quotations omitted).  The full text of the Perez-Vera Report is available online at https://www.hcch.net/e/conventions/exp128e.html .

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 4
131299674.1

More recently, the Ninth Circuit has emphasized that the proper standard for determining habitual residence "takes into account the shared, settled intent of the parents and then asks whether there has been sufficient acclimatization of the child to trump this intent." *Murphy v. Sloan*, 764 F.3d 1144, 1150 (9th Cir. 2014) (citations omitted).  In order "[t]o infer abandonment of a habitual residence by acclimatization, the *objective* facts [must] point *unequivocally* to [the child's] ordinary or habitual residence being in [the new country]." *Id.* at 1152 (internal citations omitted, emphasis added and in original).

Respondent fails to cite any case law supporting the appointment of a guardian to assist a court in determining an abducted child's habitual residence, and Petitioner's counsel is unaware of any.  None of the cases cited by Respondent stand for the position that appointment of a guardian ad litem is appropriate for determining habitual residence.  *Murphy v. Sloan* does not involve a guardian ad litem.  *See* 764 F.3d 1144, 1150 (9th Cir. 2014).  And while *Robles Antonio v. Barrios Bello* mentions that a guardian ad litem was appointed and the district court considered the guardian's recommendations in ruling on the petition, the court's decision on the petition was not before the Eleventh Circuit in the decision cited by Respondent.  Rather, in the cited case the Eleventh Circuit was only ruling on an Emergency Motion for Stay Pending Appeal.  Further review of the case history also shows that the guardian ad litem was only appointed after the Court had directed the U.S. Marshal to take custody of the child because there was substantial risk that respondent would again take the child and flee, or be arrested on immigration charges and there does not appear to have been any objections to the appointment by respondent or petitioner. *See Robles Antonio v. Barrios Bello*, No. 04-CV-1555-T, 2004 WL 1895125, at *1 (N.D. Ga. June 2, 2004).

Likewise, Respondent provides no support for her assumption that a report from a guardian regarding the Child's "relative ties and developmental, family, school, and other connections to the United States and Italy" (*see* Mem. at 2) might assist the Court in this inquiry.

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 5

To the contrary, there is no reason to believe that a five-year-old child will be able to provide any objective facts[3] bearing on the determination of her habitual residence (or acclimatization)[4] that her parents cannot and will not provide in this contested case.

In short, Respondent provides no support for her conclusory statement that "[a] Guardian ad Litem may assist the Court in its inquiry into S.A.P.H.'s place of habitual residence." *See* Mem. at 4.[5]  Ms. Hayes fails to explain *how* a guardian will be able to assist the Court in determining the Child's habitual residence or *why* the Court, on its own, is unable to determine this fact, based on evidence offered by the parties themselves.  The Court should deny the motion with respect to this first proposed purpose of the requested guardian, namely, to assist the Court in determining habitual residence.

---

[3] And, to the extent Respondent is suggesting that the Court should consider the *subjective* feelings or wishes of the Child in determining her habitual residence, that proposition is foreclosed by *Murphy*. *See* 764 F.3d at 1150 (rejecting petitioner's suggested approach "that would focus on the subjective experience of the child"); *see also Mozes*, 239 F.3d at 1076, 1078 (finding that intent of *parents*, not children, is relevant in determining habitual residence).

[4] To be clear, Respondent cannot, as a matter of law, sustain an argument that S.A.P.H. has abandoned Italy as her habitual residence and acquired a new habitual residence in the U.S. based on a claim of acclimatization occurring during the contested stay in the United States after her agreed-to return to Italy last Summer (2015). *See* Convention, art. 12 (providing that if "a period of less than one year has elapsed from the date of wrongful removal or retention" and the filing of the petition, "the authority concerned shall order the return of the child forthwith").

[5] Relatedly, in her motion, Respondent asserts that appointment of a guardian is appropriate here because there are "fundamental and significant differences in the position of the parties." Mem. at 3 (quoting *Lieberman v. Tabachnik*, No. 07-cv-02415-WYD, 2007 WL 4548570, *2 (D. Colo. Dec. 19, 2007).  The context of that quote from *Lieberman* is important.  In that case, the respondent asserted that "her children have been subjected to mistreatment and abuse for years," Petitioner "kidnaped the children in the past," and otherwise abused them. *Lieberman*, 2007 WL 4548570, at *1.  Petitioner countered by "explaining the circumstances of the their divorce, professed love for his children, denied that he had abused the children and explained the kidnaping incident from his perspective." *Id.*  The court then stated, "[b]ecause there are fundamental and significant differences in the positions of the parties concerning *how the children have been treated and how they may be impacted* if I order their return to Mexico and because it will be difficult for me to determine the ultimate facts absent the assistance of a qualified Guardian Ad Litem, I appoint a Guardian Ad Litem to aid in my understanding all of the pertinent factors concerning the minor children." *Id.* at *2 (emphasis added).

## 2. The Proposed Assessment and Opinion Regarding S.A.P.H.'s Maturity and Wishes Will Be Immaterial as a Matter of Law.

Respondent's second proposed task for the requested guardian is to assess and opine on the five-year old S.A.P.H.'s "maturity to express a desire to return to Italy or stay in the United States." Mem. at 2. According to Respondent (*see* Mem. at 4-5), this inquiry relates to her affirmative defense under Article 13 of the Hague Convention pursuant to which a court may, in its discretion, "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Convention, art. 13. Assuming *arguendo* that the hearsay report of Respondent that the Child "has expressed an objection to returning to Italy" (*see* Mem. at 5) can or should be taken into account, Respondent fails to cite a single case where a court has determined that a five-year-old child can have sufficient age and maturity to establish this defense. A finding by this Court that S.A.P.H. possesses the maturity and age contemplated by Article 13 of the Convention would be unprecedented.

Moreover, the State Department's analysis of this defense under Article 13 is instructive[6] in considering the inquiry Respondent suggests a guardian should undertake here:

> As with other Article 13 exceptions to the return obligation, the application of this exception is not mandatory. This discretionary aspect of Article 13 is especially important because of the potential for brainwashing of the child by the alleged abductor. A child's objection to being returned may be according little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child.

*See* Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, at 10510 (Mar. 26, 1986) (hereinafter cited as "Public Notice 957"). Notwithstanding the fact that no court in the United States has, to Petitioner's knowledge, held that a child of five years old possesses the maturity contemplated by Article 13, the Court will be free to interview

---

[6] It is well-settled that the Executive Branch's interpretation of a treaty "is entitled to great weight." *Abbott v. Abbott*, 560 U.S. 1, 15 (2010) (citation omitted).

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 7
131299674.1

the Child *in camera* before or during the evidentiary hearing to make its own determination on her maturity and possible undue influence as it relates to this defense. There is no reason to layer that analysis with the opinion of a stranger to the family. This proposed ground for appointing a guardian ad litem is misplaced and should be rejected.

### 3. The Proposed Assessment and Opinion Regarding an Alleged Grave Risk of Psychological Harm Will Be Immaterial as a Matter of Law.

Respondent's proposed guardian assessment relating to the so-called "grave risk of harm / intolerable situation" exception to return in Article 13 is similarly unprecedented and misplaced. As to this defense, the State Department has instructed:

> Under Article 13(b), a court in its discretion need not order a child returned if there is a grave risk that return would expose the child to physical harm or otherwise place the child in an intolerable situation.
>
> This provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests. Only evidence *directly establishing the existence of a grave risk* that would expose the child to physical or emotional harm or otherwise place the child in an intolerable situation is material to the court's determination. The person opposing the child's return must show that the risk to the child is grave, *not merely serious*.
>
> A review of deliberations on the Convention reveals that "intolerable situation" was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State. An example of an "intolerable situation" is one in which a custodial parent sexually abuses the child. If the other parent removes or retains the child to safeguard it against further victimization, and the abusive parent then petitions for the child's return under the Convention, the court may deny the petition. Such action would protect the child from being returned to an "intolerable situation" and subjected to a grave risk of psychological harm.

Public Notice 957 at 10510 (emphasis added).

The Ninth Circuit has likewise held that this exception is to be "narrowly drawn" and that:

> The exception for grave harm to the child is not license for a court

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 8
131299674.1

> in the abducted-to country to speculate on where the child would
> be happiest.  Rather, the question is whether the child would suffer
> serious abuse , that is a great deal more than minimal.

*See Larrategui v. Laborde*, No. 2:13-cv-01175 JAM-EFB, 2014 WL 128048, at *3 (E.D. Cal. Jan. 10, 2014) (citing and quoting *Cuellar v. Joyce*, 596 F.3d 505, 508-09 (9th Cir. 2010); *Asvesta v. Petroutsas*, 580 F.3d1000, 1020 (9th Cir. 2009); *Gaudin v. Remis*, 415 F.3d 1028, 1035 (9th Cir. 2005)).

There are no allegations in this case that would implicate the grave harm defense. The cases cited by and relied up on by Respondent in this section of her supporting memorandum stand in stark contrast to the allegations here.  *See* Mem. at 5-6 (collecting cases).  The risks in those cases were truly grave,[7] whereas here, at most there are vague and unsubstantiated allegations of remote / online interactions that, of late, "have become increasingly aggressive, bullying, manipulative, and condescending" and "concern[s] about the type of environment and behavior S.A.P.H. will be exposed to if she is ordered to return . . .."  *See* Decl. of Dena Michelle Hayes in Supp. of Resp't's Mot. for Appointment of Guardian ad Litem (Dkt. 14-2) ¶ 14.

In sum, this case does not involve allegations of the kind that have warranted the appointment of guardians in other cases.  This Court is well-equipped to examine any factual allegations associated with the grave harm defense without involving a guardian ad litem.  *See*

---

[7] The other cases cited by Respondent involving appointment of a guardian ad litem have very different factual circumstances from this case and involve specific, serious allegations of abuse or mistreatment.  *See Olguin v. Cruz Santana*, No. 03 CV 6299 (JG), 2004 WL 1752444, at *6 (E.D.N.Y. Aug. 5, 2004) (in case where petitioner had long history of physically abusing respondent and children, after court found petitioner had proven wrongful removal, court appointed guardian ad litem for the upcoming proceedings related to affirmative defenses); *McManus v. McManus*, 354 F. Supp. 2d 62, 65 (D. Mass. 2005) (petition for return of four children aged 11 to14 who had told respondent that petitioner "drank alcohol regularly to excess, which interfered with her ability to care for and control the children," on several occasions had "struck them or threw objects at them," and had summoned her brother and a neighbor to help discipline the children, who then had also struck at least two of the children"); *Lieberman*,2007 WL 4548570, *1 (appointing guardian ad litem where respondent asserted that petitioner had abused and neglected the children, and "kidnaped the children in the past" and petitioner countered by "explaining the circumstances of the their divorce, professed love for his children, denied that he had abused the children and explained the kidnaping incident from his perspective").

*Sullivan v. Sullivan*, No. CV-09-545-S-BLW, 2010 WL 227294, at *7 (D. Idaho Jan. 13, 2010) (holding that petitioner's past prostitution and drug use did not constitute grave harm sufficient to establish defense).  The Court should deny the motion with respect to this proposed purpose of a guardian ad litem.

> 4.  **The Proposed Guardian Will Not Aid the Court's Consideration of the Propriety or Substance of Any Appropriate Undertakings.**

As noted in one of the cases cited by Respondent in her moving papers, *Danaipour v. McLarey*, 286 F.3d 1 (2d Cir. 2002) (*see, e.g.*, Mem. at 5, 7), the Department of State's views on so-called "undertakings" are clear:

> Undertakings should be limited in scope and further the Convention's goal of ensuring the prompt return of the child to the jurisdiction of habitual residence, so that the jurisdiction can resolve the custody dispute.  Undertakings that do more than this would appear questionable under the Convention, particularly when they address in great detail issues of custody, visitation, and maintenance.

*Danaipour v. McLarey*, 286 F.3d at 22 (citation omitted).  Whether and, if so, what undertakings should be required in this case uniquely involve the judicial function and require the Court to navigate issues of international comity and jurisdictional reach.  There are no allegations in this case that would require the "ameliorative measures" suggested by the cases relied upon in Respondent's briefing.  The involvement of a guardian ad litem on this issue at this stage provides no aid to the Court and unnecessarily complicates both the resolution of and implementation of any order relating to these proceedings.  Further, to the extent that the Court, after or in connection with the issuance of a return order on the Petition, discerns a need for the kind of input and opinion Respondent suggests on undertakings, the Court and the parties will be able to address those issues in a concrete setting at that time.  The possibility of the entry of undertakings does not warrant the appointment of a guardian ad litem in this case at this time.

## II.    CONCLUSION

For the foregoing reasons and pursuant to the authorities cited, the Court should deny

Respondent's Motion for the Appointment of a Guardian ad Litem.

DATED:  May 6, 2016 **PERKINS COIE LLP**

By:  */s/ Kelly A. Cameron*
Kelly A. Cameron
Kcameron@perkinscoie.com
1111 West Jefferson Street, Suite 500
Boise, ID  83702-5391
Telephone:  208.343.3434

*Attorneys for Petitioner Danilo Pennacchia*

RESPONSE IN OPPOSITION TO MOTION FOR APPOINTMENT OF GUARDIAN - 11
131299674.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of June, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Murray D. Feldman
(mfeldman@hollandhart.com)

Anna E. Eberlin
(aeeberlin@hollandhart.com)

Alexandra S. Grande
(asgrande@hollandhart.com)

*Attorneys for Plaintiff JH Kelly, LLC*

                                                          */s/ Kelly A. Cameron*
                                                          Kelly A. Cameron